ACCEPTED
07-15-00282-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
12/21/2015 9:07:46 AM
Vivian Long, Clerk

No. 07-15-00282-CR
No. 07-15-00283-CR

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
12/21/2015 9:07:46 AM
VIVIAN LONG
CLERK

## IN THE COURT OF APPEALS
## FOR THE SEVENTH DISTRICT OF TEXAS
## AT AMARILLO

**JEENA ROBERTS,**
Appellant

v.

**THE STATE OF TEXAS.**
Appellee

On appeal from Trial Court Cause No. 2010-429,389, 2010-429,390
In the 140TH District Court, Lubbock County, Texas
Hon. Jim Bob Darnell, Presiding

## APPELLANT'S BRIEF

ROBERT A. SCARDINO
Bar No. 17719500
Robert@sflawtx.com
Sweeney, Coombs & Fredericks Bldg.
1004 Congress St., 3rd Floor
Houston, TX 77002
T: (713) 229-9292
F: (713) 229-9931

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL[1]

Appellant...........................................................Jeena Roberts

Trial Counsel for Appellant.................................Dan Cogdell

Appellate Counsel for Appellant...................Robert A. Scardino

Trial Counsel for the State............................Adrian Delacruz

Appellate Counsel for the State................................Jeff Ford

Trial Judge.........................................Hon. Jim Bob Darnell

---

[1] Tex. R. App. 38.1(a)(1)(A).

# TABLE OF CONTENTS[2]

IDENTITY OF PARTIES AND COUNSEL ........................................ 2

TABLE OF CONTENTS ........................................................... 3

INDEX OF AUTHORITIES ........................................................ 5

STATEMENT OF THE CASE ...................................................... 8

ISSUES PRESENTED .............................................................. 9

STATEMENT OF FACTS .......................................................... 9

SUMMARY OF THE ARGUMENT ................................................ 11

ARGUMENT ........................................................................ 13

I.   THE TRIAL COURT ERRED BY NOT SUPPRESSING THE
BLOOD DRAW EVIDENCE. ........................................................ 13

II.   THE TRIAL COURT ERRED BY NOT SUPPRESSING THE
UN-MIRANDIZED STATEMENTS OF APPELLANT ......................... 16

   A.   Appellant was in custody when Knowlton placed her in handcuffs
in   the back of his patrol car ................................................... 18

      1.   Knowlton made his suspicion that Appellant committed
intoxication manslaughter known to Appellant ............................. 19

      2.   Knowlton restricted Appellant's freedom of movement in a
significant way ..................................................................... 24

      3.   The nature of the stop was coercive. ................................ 28

   B.   Defendant was interrogated. ............................................ 29

---

[2] Tex. R. App. 38.1(b).

II.   THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR NEW TRIAL BECAUSE HER GUILTY PLEA WAS NOT VOLUNTARILY ENTERED..................................................31

PRAYER ........................................................................33

# INDEX OF AUTHORITIES[3]

## Cases

*Alford v. State*, 22 S.W.3d 669 (Tex. App.—Fort Worth 2000, pet. ref'd). ..........................................................................................18,26

*Berkemer v. McCarty*, 468 U.S. 420 (1984). ............................................. 18,19,28

*Broddus v. State*, 693 S.W.2d 459 (Tex. Crim. App. 1985)......................31,32

*California v. Beheler*, 463 U.S. 1121 (1983) (per curium). ........................18,19

*Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000). ......................... 14

*Christal v. State*, 692 S.W.2d 656 (Tex. Crim. App. 1981). .......................... 31

*Dowthitt v. State*, 931 S.W.2d 244 (Tex. Crim. App. 1996)........................... 19

*Estrada v. State*, No. PD-0106-13 (Tex. Crim. App. Mar. 12, 2014) (not designated for publication).....................................................................28

*Florida v. Bostick*, 501 U.S. 429, 438 (1991). ............................................ 19

*Gay v. State*, 2 Tex. App. 127 (1877). ...................................................... 29

*Harrelson v. State*, 692 S.W.2d 659 (Tex. Crim. App. 1985)........................ 31

*Howes v. Fields*, 132 S.Ct. 1181 (2012).................................................... 19

*Jordy v. State*, 969 S.W.2d 528 (Tex. App.—Fort Worth 1998, no pet.)... 17

*Lewis v. State*, 72 S.W.3d 704 (Tex. App.—Fort Worth 2002, pet. ref'd). 20

*Minnesota v. Murphy*, 465 U.S. 420 (1984)............................................... 19

*Miranda v. Arizona*, 384 U.S. 436 (1966)................................................ 12,17,30

*Missouri v. McNeely*, 133 S. Ct. 1552 (2013).............................................. 14

---

[3] Tex. R. App. 38.1(c).

*New York v. Quarles*, 467 U.S. 649 (1984). ........................ 25

*Oregon v. Mathiason*, 429 U.S. 492 (1977) (per curium). ........................ 19

*Riley v. State*, 4 Tex. App. 538 (1878). ........................ 29

*Rhode Island v. Innis*, 446 U.S. 291 (1980). ........................ 29

*Shiflet v. State*, 732 S.W.2d 622 (Tex. Crim. App. 1985). ........................ 29

*Silverthorn Lumber Co. v. United States*, 251 U.S. 385 (1920). ........................ 12,30

*Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602 (1989). ........................ 14

*Stansbury v. California*, 511 U.S. 318 (1994) (per curium). ........................ 20

*State v. Consaul*, 960 S.W.2d 680 (Tex. App.—El Paso 1997); *pet. dism'd, improvidently granted*, 982 S.W.2d 899 (Tex. Crim. App. 1998) ........................ 20,24,25

*State v. Ortiz*, 382 S.W.3d 367 (Tex. Crim. App. 2012). ........................ passim

*State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013). ........................ 18

*State v. Villarreal*, No. PD-0306-14 (Tex. Crim. App. Nov. 26, 2014). ........................ 15,16

*Sutherland v. State*, 436 SW 3d 28 (Tex. Ct. App.—Amarillo 2014). ........................ 15

*United States v. Hill*, 564 F.2d 1179 (5th Cir. 1977). ........................ 31

*United States v. Lopez*, 571 F.2d 1345 (5th Cir. 1978). ........................ 31

*United States v. Robinson*, 414 U.S. 218 (1973). ........................ 12,14

*Winston v. Lee*, 470 U.S. 753 (1985). ........................ 14

*Wooten v. State*, 612 S.W.2d 561(Tex. Crim. App. 1981). ........................ 31
**Constitutional Provisions**
U.S. Const. amend. V ........................ 7

U.S. Const. amend. IV.................................................................... 14

Tex. Const. art. I, §10. ................................................................. 17

## Statutes

Tex. Crim. Proc. Code Ann. art. 44.02.......................................... 32

Tex. Code Crim. Proc. Ann. art. 38.22.......................................... 17

Tex. R. App. 38.1. ................................................................ passim

Tex. R. App. 38.2. ..................................................................8, 11

Tex. Trans. Code §724.001............................................................ 15

Tex. Trans. Code §724.002............................................................ 15

## STATEMENT OF THE CASE[4]

On October 22, 2010, Lubbock Police Officer Nicholas Knowlton arrested Appellant for intoxication manslaughter.[5] On November 22, 2010, a grand jury indicted Appellant for intoxication manslaughter and intoxication assault.[6] On March 6, 2012, Appellant filed motions to suppress any statements she made to Knowlton and the blood draw evidence.[7] On July 27, 2012 a hearing was held on the motions to suppress.[8] On August 17, 2012, Appellant filed a brief in support of her motions to suppress,[9] and the State filed a response on September 4, 2012.[10] On September 25, 2012, the trial court entered an order denying Appellant's motions to suppress.[11] On November 27, 2012, Appellant entered a guilty plea in both cases.[12] Appellant obtained habeas relief from the Court of Criminal Appeals and was given the opportunity to file an out-of-time appeal and that court remanded the case to the trial court.[13]

---

[4] Tex. R. App. 38.1(d); 38.2(a)(1)(B).
[5] (R.R. II at 27).
[6] (C.R.I at 7).
[7] (C.R.I at 49-52).
[8] *See generally* R.R. II.
[9] (C.R. I at 81-87).
[10] (C.R. I at 88-94).
[11] (C.R. I at 95).
[12] On March 5, 2013, Appellant filed a motion to supplement or alternatively motion to supplement and amend motion for new trial, which was overruled by operation of law.
[13] (C.R. I at 136-38).

Appellant filed a motion for new trial, which was overruled by operation of law.[14] Appellant filed a notice of appeal on July 10, 2015.[15]

## ISSUES PRESENTED[16]

*Defendant's First Point of Error:* The trial court erred by not suppressing the blood draw evidence.

*Defendant's Second Point of Error:* The trial court erred by not suppressing the un-Mirandized statements of appellant.

*Defendant's Third Point of Error:* The trial court erred by denying appellant's motion for new trial because her guilty plea was not voluntarily entered.

## STATEMENT OF FACTS[17]

Knowlton arrived on an "accident with injuries" scene and immediately realized that one person was deceased.[18] Several other patrol cars and an ambulance were also at the scene.[19] Knowlton approached Appellant, who was in her car, and asked Appellant if she was the driver of the vehicle.[20] Appellant responded that she was.[21] Knowlton physically escorted Appellant to his patrol car by putting his hand on Appellant's arm

---

[14] (C.R. I at 139-141).
[15] (C.R. I at 142-46).
[16] Tex. R. App. 38.1(f).
[17] Tex. R. App. 38.1(g).
[18] (R.R. II at 10-11, 13, 35).
[19] Video at 19:10; 19:24:32.
[20] (R.R. II at 15).
[21] (R.R. II at 16, 35-36).

so that she could not walk away.[22] When they got the patrol car, Knowlton placed Appellant in handcuffs and put her in the back seat with the door closed.[23] Appellant made it clear to Knowlton that she did not want to have handcuffs on her or get into the back seat of his patrol car, but he required her to do so over her objections.[24] Knowlton asked Appellant: "What happened?"[25] Appellant responded that she was driving and was out of control and was speeding.[26] Knowlton then asked Appellant: "Have you been drinking today?" to which Appellant responded, "kind of."[27]

Appellant asked multiple times if she could get out of the back of the patrol car and the handcuffs, but she was refused every single time.[28] Appellant made repeated requests to open the back door of the patrol car.[29] At one point Knowlton responded: "that's not happening ma'am."[30] A short time later, Knowlton told Appellant that someone had died in the accident that she just caused.[31] Knowlton Mirandized Appellant and asked her to

---

[22] (R.R. II at 20, 38); Video at 19:17:16-19:17:28.
[23] (R.R. II at 21-22).
[24] Video at 19:17:32-19:19:15.
[25] Video at 19:19:22.
[26] Video at 19:19:32-19:19:38.
[27] Video at 19:19:46.
[28] *See, e.g.,* Video at 19:30:30; 19:30:40; 19:30:58;19:37:03.
[29] *See, e.g.,* Video at 19:28:4;19:29:17.
[30] Video at 19:29:27.
[31] Video at 19:23:06-19:25:49.

provide a specimen of her blood.[32] Appellant refused to provide a specimen and, Knowlton obtained a specimen without a warrant.[33]

Appellant filed motions to suppress any statements she made to Knowlton and the blood draw evidence.[34] A hearing was held on the motions to suppress, and Knowlton testified.[35] The trial court subsequently entered an order denying Appellant's motions to suppress.[36] Thereafter, Appellant pled guilty, based on her belief that she would be able to appeal the trial court's ruling on the motions to suppress.[37] Appellant obtained habeas relief from the Court of Criminal Appeals and the court remanded the case to the trial court.[38] Appellant filed a motion for new trial, which was overruled by operation of law.[39]

## SUMMARY OF THE ARGUMENT[40]

The trial court erred when it did not suppress the blood draw evidence because the search violated the Fourth Amendment. Before the government may search an individual they must either have a warrant or there must be an applicable, recognized exception to the warrant

---

[32] (R.R. II at 28).
[33] (R.R. II at 28-31).
[34] (C.R.I at 49-52).
[35] *See generally* R.R. II.
[36] (C.R. I at 95).
[37] (R.R. III).
[38] (C.R. I at 137-37).
[39] (C.R. I at 139-141).
[40] Tex. R. App. 38.1(h); 38.2(a).

requirement.[41] In this case, the State did not obtain a warrant, and the State did not meet its burden of showing exigent circumstances existed to justify the warrantless blood draw. Therefore, the trial court erred in overruling the Defendant's motion to suppress.

The trial court erred when it denied Appellant's motion to suppress the statements made during her custodial interrogation. Suppression of the type of official overbearing that occurs in this case is what the Supreme Court ruled is "necessary to ensure that what was proclaimed in the Constitution had not become but a 'form of words' in the hands of government officials." [42] Knowlton made his belief that Appellant committed intoxication manslaughter known to Appellant;[43] Appellant's freedom of movement was significantly restricted because she was physically escorted to the patrol car where she was handcuffed and placed in the back seat with the door closed;[44] and the nature of the stop was coercive because of the large number of police officers, EMS, patrol cars, and an ambulance.[45] Therefore, Appellant was in custody. Additionally, Knowlton interrogated Appellant while she was in custody without

---

[41] *See, e.g., United States v. Robinson,* 414 U.S. 218, 224 (1973).

[42] *Miranda v. Arizona,* 384 U.S. 436 (1966) (quoting *Silverthorn Lumber Co. v. United States,* 251 U.S. 385, 392 (1920).

[43] Video at 19:19:22-19:19:50; 19:24:28-19:25:52.

[44] (R.R. II at 20-22, 38).

[45] See Video at 19:10; 19:24:32.

Mirandizing her. Therefore, the trial court erred in denying Appellant's motion to suppress her statements.

Appellant's plea of guilty was not voluntarily entered because it was based upon the false belief that the merits of her pretrial motions were preserved for appeal. During the guilty plea, the trial court specifically told Appellant that she would be able to appeal "any matters that have been raised by written motion prior to trial today."[46] However, Appellant's belief was erroneous because the certification of defendant's right to appeal stated that Appellant had no right to appeal.[47] This erroneous belief rendered Appellant's guilty plea involuntary. Therefore, the trial court erred when it denied Appellant's motion for new trial.

## ARGUMENT[48]

## I.   THE TRIAL COURT ERRED BY NOT SUPPRESSING THE BLOOD DRAW EVIDENCE.

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause."[49] Before the government may search an individual they must either have a warrant or

---

[46] (R.R. III at 6).
[47] (C.R. I at 111).
[48] Tex. R. App. 38.1(i).
[49] U.S. CONST. amend. IV.

there must be an applicable, recognized exception to the warrant requirement.[50] Appellate courts review applications of law, such as motions to suppress, *de novo*.[51]

In *Missouri v. McNeely*, the United States Supreme Court recognized that "a compelled physical intrusion beneath [a person's] skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation" is "an invasion of bodily integrity [that] implicates an individual's 'most personal and deep-rooted expectations of privacy'" and amounts to a search of the person's body.[52] The *McNeely* Court rejected a *per se* rule that the exigency exception to the warrant requirement applied in drunk-driving cases.[53] The Court held that the fact that the body metabolizes alcohol and thereby rids it from the blood is not enough to justify a warrantless blood draw.[54]

In *Sutherland v. State*, this Court analyzed the Texas Transportation Code provisions, the so-called "implied consent" and "mandatory blood draw" statutes.[55] This Court refused to treat the mandatory blood draw statute as an exception to the Fourth Amendment warrant requirement,

---

[50] *See, e.g., United States v. Robinson*, 414 U.S. 218, 224 (1973).
[51] *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).
[52] *Missouri v. McNeely*, 133 S. Ct. 1552 (2013) (quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985)) (*Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 616 (1989)).
[53] *McNeely*, 133 S. Ct. 1552.
[54] *Id.*
[55] *Sutherland v. State*, 436 SW 3d 28 (Tex. Ct. App.—Amarillo 2014). Tex. Trans. Code § 724.011 - .012.

and held a warrant was required.[56] If the blood draw is done without a warrant, the State bears the burden of showing that exigent circumstances existed to justify a warrantless draw.[57] In *Sutherland*, the State was unable to show exigent circumstances to justify the warrantless blood draw, and this Court held that the trial court should have suppressed the blood draw evidence.[58]

In *State v. Villarreal*, Villarreal was arrested for felony DWI and subjected to a warrantless blood draw.[59] After an exhaustive review of United States Supreme Court precedent on Fourth Amendment Law, the Court of Criminal Appeals rejected each one of the State's several proffered warrant exceptions for the blood draw.[60] The *Villarreal* Court ruled that the warrantless, nonconsensual drawing of blood from an individual suspected of driving while intoxicated, conducted pursuant to the implied consent and mandatory blood draw provisions in the Texas Transportation Code violated the Fourth Amendment.[61]

---

[56] *Sutherland*, 436 SW 3d 28. Tex. Trans. Code § 724.011 - .012.
[57] *Sutherland*, 436 SW 3d 28. Tex. Trans. Code § 724.011 - .012.
[58] *Sutherland*, 436 SW 3d 28. Tex. Trans. Code § 724.011 - .012.
[59] *State v. Villarreal*, No. PD-0306-14 (Tex. Crim. App. Nov. 26, 2014).
[60] *Villarreal*, No. PD-0306-14 (ruling that the natural dissipation of alcohol in the body is not an exigent circumstance, prior waiver of Fourth Amendment rights cannot apply in these circumstances, the automobile exception does not apply, the special needs exception does not apply, the search incident to arrest exception does not apply, and the search does not pass a general Fourth Amendment balancing test).
[61] *Villarreal*, No. PD-0306-14.

In the present case, Knowlton asked Appellant to provide a specimen of her blood. [62] Appellant refused as evidenced by the DIC-24 form indicating her refusal. [63] Without obtaining a warrant, Knowlton then transported Appellant to the hospital and obtained a mandatory blood draw. [64]

The State did not obtain a warrant, and the State did not meet its burden of showing exigent circumstances existed to justify the warrantless blood draw, in fact they did not present any argument for exigency. Therefore, the blood draw violated the Fourth Amendment, and the trial court erred in overruling Appellant's motion to suppress.

## II. THE TRIAL COURT ERRED BY NOT SUPPRESSING THE UN-MIRANDIZED STATEMENTS OF APPELLANT.

The trial court erred when it did not suppress the un-Mirandized statements of Appellant. The United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure require that, unless a police officer "demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination," all statements made by a defendant during a custodial interrogation must be suppressed. [65] The United States Supreme Court, and the Court of Criminal Appeals held

---

[62] (R.R. II at 28).
[63] (R.R. II at 28).
[64] (R.R. II at 29-31).
[65] U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex. Crim. Proc. Code Ann. art. 38.22 §2; *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

that a defendant may knowingly and intelligently waive his constitutional rights only after a police officer has warned him "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."[66] These so-called "*Miranda* warnings" are the effective procedural safeguards to protect this "precious right."[67] These rights are triggered when there is "custodial interrogation," meaning that the individual is both (1) in custody and (2) interrogated.[68]

This Court must review this case *de novo.*[69] The ultimate legal determination of whether an individual was in custody requires an appellate court to take the facts, as assessed for weight and credibility by the trial court, and then to make a legal determination as to whether those facts amount to custody under the law.[70]

### A. Appellant was in custody when Knowlton placed her in handcuffs in the back of his patrol car.

Custody does not require a formal arrest, but can be created by a "restraint on freedom of movement" of the degree associated with a formal

---

[66] *Miranda*, 384 U.S. at 479.

[67] *Id.*

[68] *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012)

[69] *Jordy v. State*, 969 S.W.2d 528, 532 (Tex. App.—Fort Worth 1998, no pet.).

[70] *State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013) (citing *Ortiz*, 382 S.W.3d at 372).

arrest.[71] If, during a traffic or investigatory stop, a suspect is subjected to prolonged, persistent questioning or other treatment or other procedures not ordinarily associated with temporary detentions, the detention becomes the functional equivalent of a formal arrest and *Miranda* becomes applicable.[72] The ultimate question is whether, given all the circumstances, a reasonable person would perceive the detention likely to be long term.[73] Custody requires: (1) a restraint on the defendant's freedom of movement, and (2) the restraint be either a restraint comparable to a formal arrest or an actual formal arrest. Whether there is a restraint on a person's freedom of movement is determined by whether a reasonable person in the situation would have perceived himself as not free to break off the confrontation with the officer, either by leaving the officer's presence or by requiring the officer to leave.[74] Courts use the "reasonable person" standard in the custody analysis, which presupposes an innocent person.[75]

Whether a person has been detained to the degree associated with arrest is evaluated on an *ad hoc*, or case-by-case, basis.[76] Courts look to

---

[71] *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curium).

[72] *Ortiz*, 382 S.W.3d 367.

[73] *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). *See Alford v. State*, 22 S.W.3d 669, 673 (Tex. App.—Fort Worth 2000, pet. ref'd).

[74] *See Minnesota v. Murphy*, 465 U.S. 420, 430-31 (1984); *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curium); *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curium).

[75] *Florida v. Bostick*, 501 U.S. 429, 438 (1991); *Berkemer*, 468 U.S. at 441.

[76] *Ortiz*, 382 S.W.3d at 372 (citing *Dowthitt v. State*, 931 S.W.2d 244 ,255 (Tex. Crim. App. 1996).

different circumstances to determine whether a person is in custody.[77] These circumstances include (1) whether the police officer made his suspicion that the person committed a crime known to him, (2) whether the person's freedom of movement was restricted in a significant way, and (3) whether the nature of the stop was coercive.[78] In this case, each factor indicates that Appellant was in custody at the time of her interrogation by Knowlton.

### 1. Knowlton made his suspicion that Appellant committed intoxication manslaughter known to Appellant.

Normally, the determination of whether custody exists does not depend on the "subjective views harbored by either the interrogating officers or the person being questioned," but on the objective circumstances of the interrogation.[79] However, if the officer manifests his belief to the detainee that he is a suspect, then that officer's subjective belief becomes relevant to the determination of whether a reasonable person in the detainee's position would believe he is in custody.[80] This manifestation could occur if some information substantiating probable cause is related by

---

[77] *See, e.g., Howes v. Fields,* 132 S.Ct. 1181, 1193 (2012); *Ortiz,* 382 S.W.3d 367.
[78] *See, e.g., Ortiz,* 382 S.W.3d 367.
[79] *Stansbury v. California,* 511 U.S. 318, 323 (1994) (per curium); *Lewis v. State,* 72 S.W.3d 704, 707 (Tex. App.—Fort Worth 2002, pet. ref'd).
[80] *Ortiz,* 382 S.W.3d 367.

the officers to the suspect or by the suspect to the officers.[81] This manifestation could occur either before or after the restraint on freedom of movement of the degree associated with formal arrest.[82]

In *State v. Ortiz*, Ortiz was stopped for speeding.[83] After asking Ortiz for his driver's license and insurance, Officer Johnson asked Ortiz to step out of his car and move to the officer's patrol car, where Johnson began to question Ortiz.[84] After Johnson questioned Ortiz, he questioned Ortiz's wife, who was sitting in the passenger's seat of Ortiz's car.[85] Johnson then called for backup officers.[86] While waiting for the backup officers to arrive, Johnson asked Ortiz "How much drugs are in the car?" to which Ortiz responded "No. No. No. No."[87] Ortiz then consented to a search of his person and the car.[88] While Johnson searched Ortiz, the backup officers arrived.[89] One of the backup officers approached Mrs. Ortiz and began to pat her down.[90] When Mrs. Ortiz made movements to avoid the patdown, the officer handcuffed her.[91] Shortly after handcuffing her,

---

[81] *State v. Consaul*, 960 S.W.2d 680, 687 (Tex. App.—El Paso 1997); *pet. dism'd, improvidently granted*, 982 S.W.2d 899 (Tex. Crim. App. 1998).
[82] *Ortiz*, 382 S.W.3d at 375.
[83] *Id.* at 369.
[84] *Id.* at 369.
[85] *Id.* at 370.
[86] *Id.* at 370.
[87] *Id.* at 370.
[88] *Id.* at 370.
[89] *Id.* at 370.
[90] *Id.* at 370.
[91] *Id.* at 370.

the backup officers signaled to Johnson, indicating that they had discovered something during the patdown.[92] Johnson then told Ortiz "Yep. Turn around. Put your hands behind your back." and handcuffed Ortiz.[93] One of the officers that patted down Mrs. Ortiz then approached Johnson and told him that he had indeed found "something" under Mrs. Ortiz's skirt.[94] Johnson asked Ortiz "What kind of drugs does your wife have?"[95] Ortiz responded "coca."[96] Johnson began to repeat the question "What kind of drugs . . . ?" and Ortiz said "cocaina."[97]

The *Ortiz* Court held that Johnson's act of placing Ortiz in handcuffs after the backup officers signaled that they found something on Mrs. Ortiz reinforced Ortiz's perception that both his wife and, by association, he were now in custody for something substantially more serious than speeding.[98] The *Ortiz* court held that Ortiz was in custody in part because the officer made his suspicion that Ortiz had drugs known to Ortiz.[99]

In this case, Knowlton heard an "accident with injuries" call go out on the radio at 7:02 p.m.[100] When Knowlton arrived on the scene, he

---

[92] *Id.* at 370.
[93] *Id.* at 370.
[94] *Id.* at 375.
[95] *Id.* at 370.
[96] *Id.* at 370.
[97] *Id.* at 370-71.
[98] *Id.* at 375.
[99] *Id.* at 373-74.
[100] (R.R. II at 10-11).

realized that one of the victims was deceased.[101] Knowlton approached Appellant, who was in her car.[102] Knowlton asked Appellant if she was the driver of the vehicle, and Appellant responded that she was.[103] Knowlton physically escorted Appellant to the back of his patrol car where she was handcuffed and placed in the back seat with the door closed.[104] Knowlton asked Appellant: "What happened? What happened today? You tell me what happened. What happened?"[105] Appellant responded: "I was driving and I was out of control."[106] Knowlton asked: "Driving out of control?"[107] Appellant replied: "Well, I was speeding."[108] Knowlton asked how fast she was speeding and Appellant responded: "fast enough to make an accident."[109] Knowlton then asked Appellant "Have you been drinking today" to which Appellant responded, "kind of."[110]

A short time later, Knowlton told Appellant that someone had died in the accident.[111] Appellant asked: "Is that really because of the accident I got into?"[112] Knowlton responded: "Yes ma'am, it is."[113] Appellant asked:

---

[101] (R.R. II at 13, 35).
[102] (R.R. II at 15).
[103] (R.R. II at 16, 35-36).
[104] (R.R. II at 20, 38); Video at 19:17:16-19:17:28.
[105] Video at 19:19:22.
[106] Video at 19:19:32.
[107] Video at 19:19:35.
[108] Video at 19:19:36.
[109] Video at 19:19:38.
[110] Video at 19:19:46.
[111] Video at 19:23:06.
[112] Video at 19:24:28.

"I killed someone? I'm asking, did I kill someone?"[114] Knowlton said: "Yes ma'am."[115] Appellant asked again: "I killed someone?"[116] Knowlton again said: "Yes ma'am."[117] Appellant asked: "It was completely my fault?"[118] Knowlton responded: "Mmmhmm."[119] Appellant asked: "one hundred percent?"[120] Knowlton said: "You told me you were speeding, and that you were out of control and that you caused the accident."[121]

Knowlton believed that Appellant was intoxicated, that she caused the accident, and that someone had died as a result of the accident; and Knowlton made his beliefs known to Appellant while she was handcuffed in the back of his patrol car. Knowlton made his manifestation of his suspicion that Appellant committed intoxication manslaughter much more clear than Officer Johnson did in *Ortiz*. In *Ortiz*, Johnson only asked pointed questions, where here Knowlton specifically said that Appellant killed someone in the accident that she caused as a result of her intoxication. Therefore, this factor weighs in favor of a finding of custody.

### 2. Knowlton restricted Appellant's freedom of movement in a significant way.

---

[113] Video at 19:24:32.
[114] Video at 19:24:38.
[115] Video at 19:24:48.
[116] Video at 19:25:28.
[117] Video at 19:25:44.
[118] Video at 19:25:45.
[119] Video at 19:25:47.
[120] Video at 19:25:48.
[121] Video at 19:25:49.

One of the most important circumstances that courts look for in evaluating whether a person was in custody is whether the person's freedom of movement was restricted in a significant way. In *State v. Consaul*, two detectives interrogated the defendant at the stationhouse.[122] The officers placed themselves in close proximity of the defendant while she was in a corner with no apparent avenue of egress.[123] The detectives touched her and crowded her.[124] There was conflicting testimony that an officer escorted her to the restroom and waited for her so that she would not leave.[125] A detective told the defendant that if she stated where the child was she could go home.[126] The trial court ruled that the defendant was in custody and suppressed her statements, and the Court of appeals affirmed.[127]

Generally, handcuffing a person does not automatically mean that the person is in custody.[128] However, whether a person is physically restrained during questioning is a relevant factor in evaluating whether a person is in custody.[129] In *Ortiz*, Ortiz's wife was patted down by officers,

---

[122] *State v. Consaul*, 960 S.W.2d 680, 687 (Tex. App.—El Paso 1997); *pet. dism'd, improvidently granted*, 982 S.W.2d 899 (Tex. Crim. App. 1998).

[123] *Id.* at 687.

[124] *Id.* at 687.

[125] *Id.* at 687.

[126] *Id.* at 687.

[127] *Id.* at 687.

[128] *Ortiz*, 382 S.W.3d at 374.

[129] *See New York v. Quarles*, 467 U.S. 649, 655 (1984).

who then signaled to Officer Johnson that they had found something illegal or dangerous.[130] That officer then handcuffed Ortiz.[131] The court ruled that by immediately handcuffing Ortiz, the officer conveyed to him that he believed that Ortiz was associated with his wife's illicit behavior.[132]

In *Alford v. State*, Alford was stopped by an officer for passing cars and weaving in and out of lanes.[133] After driving a for some time after the officer activated his lights, Alford stopped his car but did not heed the officer's request to get out of the truck.[134] The officer got Alford out of the truck, put him on the ground, and handcuffed him because he did not want Alford to run or fight.[135] After handcuffing Alford, the officer stood Alford up by his truck and noticed that Alford had alcohol on his breath and his eyes were red, bloodshot, glassy, and had dilated pupils, swaying and staggering, and was argumentative and combative.[136] Thereafter, Alford was questioned by officers.[137] The *Alford* Court held the trial court erred in denying Alford's motion to suppress his statements because a reasonable

---

[130] *Ortiz*, 382 S.W.3d at 374.
[131] *Id.* at 374.
[132] *Id.* at 374.
[133] *Alford v. State*, 22 S.W.3d 669, 671 (Tex. Ct. App.—Fort Worth 2000).
[134] *Id.* at 671.
[135] *Id.* at 671.
[136] *Id.* at 671.
[137] *Id.* at 671-72.

person in this circumstance would not have felt that he was at liberty to terminate the interrogation and leave.[138]

In this case, as Knowlton escorted Appellant to his patrol car, he physically put his hand on Appellant's arm so that she could not walk away.[139] When they got to the patrol car, Knowlton placed Appellant in handcuffs and put her in the back seat with the door closed.[140] Appellant made it clear to Knowlton that she did not want to be handcuffed or get into the back seat of his patrol car, but he required her to do so over her objections.[141] Once she was placed in the back of the patrol car, Appellant asked multiple times if she could get out, but she was refused every time.[142] Appellant made repeated requests to open the back door of the patrol car.[143] At one point Knowlton responded, "that's not happening ma'am." [144] Appellant also asked Knowlton several times if he would take off the handcuffs so that she could wipe her nose, but Knowlton refused.[145]

Appellant's freedom of movement was completely restrained during almost the entire stop, to the extent that she was unable to even wipe her nose. Knowlton testified that Appellant was not free to leave, and he never

---

[138] *Id.* at 673.

[139] (R.R. II at 20, 38); Video at 19:17:16-19:17:28.

[140] (R.R. II at 21-22).

[141] Video at 19:17:32-19:19:15.

[142] *See, e.g.,* Video at 19:30:30; 19:37:03.

[143] *See, e.g.,* Video at 19:28:4;19:29:17.

[144] Video at 19:29:27.

[145] Video at 19:30:30; 19:30:40; 19:30:58.

told her that she was free to leave and never gave her any reason to think that she was free to leave or that she was not in his care, custody, or control. [146] The objective facts also support Knowlton's subjective conclusion. Appellant asked Knowlton repeatedly if she could leave, if he would take her handcuffs off, if he would open the back door of the patrol car, and if she could wipe her nose and Knowlton denied each request. Knowlton's testimony that Appellant was placed in handcuffs for safety and not because she was under arrest does not change the analysis. Knowlton even frankly testified that Appellant's "liberty [was] restrained in a significant way."[147] The objective facts show that Appellant's freedom of movement was completely restrained and that no reasonable person could think that they were at liberty to terminate the interrogation and leave.

### 3.    The nature of the stop was coercive.

A normal traffic stop is non-custodial because it is brief and relatively non-coercive.[148] An ordinary traffic stop usually involves a single police car and one or two officers.[149] If the ordinary number of vehicles and officers are present then this factor will weigh against a custody finding.[150]

---

[146] (R.R. II at 38).
[147] (R.R. II at 46).
[148] *Berkemer v. McCarty*, 468 U.S. 420, 437-38 (1984).
[149] *State v. Ortiz*, 382 S.W.3d 367, 374 (Tex. Crim. App. 2012).
[150] *Estrada v. State*, No. PD-0106-13 (Tex. Crim. App. Mar. 12, 2014) (not designated for publication).

In this case, the record is not clear exactly how many officers and patrol cars were present at the scene. At least three other police officers and several other patrol cars can be seen in the video, in addition to an ambulance.[151] Knowlton testified that they moved Appellant part way through the interrogation partly to remove her from all of the patrol car lights.[152] There were also additional official personnel at the scene, including two EMS officials who also questioned Appellant.[153] Because there were multiple patrol cars and multiple officers at the scene, the nature of the stop was coercive. Therefore, this factor weighs in favor of a finding of custody.

## B.    Defendant was interrogated.

Interrogation includes "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect."[154] Evidence that the officer sought an incriminating response is evidence suggesting that they should have known their action was reasonably likely to elicit such a response.[155]

---

[151] Video at 19:10; 19:24:32.
[152] (R.R. II at 25).
[153] Video at 19:30:24.
[154] *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).
[155] *Id.* at 301.

It has long been held that oral admissions against interest made by one in custody are inadmissible because they are so liable to be misunderstood, so easily fabricated, and so hard to contradict.[156]

In this case, Knowlton testified that he asked Appellant "questions that [were] clearly relevant to the investigation and prosecution of this case."[157] These included "What happened?" and "Have you been drinking today?" The State never argued to the trial court that there was no interrogation, and the trial court found that there was an interrogation.[158] Knowlton interrogated Appellant.

Suppression of exactly the type of "official overbearing" that occurs in this case is what the Supreme Court ruled is "necessary to ensure that what was proclaimed in the Constitution had not become but a 'form of words' in the hands of government officials."[159] Knowlton made his belief that Appellant committed intoxication manslaughter known to Appellant, Appellant's freedom of movement was significantly restricted, and the nature of the stop was coercive; therefore, Appellant was in custody when she was placed in the back of Knowlton's patrol car in handcuffs. Additionally, Knowlton interrogated Appellant while she was in custody

---

[156] *Shiflet v. State,* 732 S.W.2d 622 (Tex. Crim. App. 1985) (citing *Gay v. State,* 2 Tex. App. 127 (1877); *Riley v. State,* 4 Tex. App. 538 (1878)).
[157] (R.R. II at 40).
[158] (C.R. I at 95).
[159] *Miranda v. Arizona,* 384 U.S. 436 (1966) (quoting *Silverthorn Lumber Co. v. United States,* 251 U.S. 385, 392 (1920).

without Mirandizing her. Therefore, the trial court erred when it denied Appellant's motion to suppress her statements.

## III.   THE TRIAL COURT BY DENYING APPELLANT'S MOTION FOR NEW TRIAL BECAUSE HER PLEA OF GUILTY WAS NOT VOLUNTARILY ENTERED.

Appellant's guilty plea was not voluntary because it was based upon the false belief that the rulings in her pretrial motions were preserved for appeal. As a matter of constitutional law, a guilty plea is not voluntary if it was induced by an agreement, which was approved by the court, that a question could be appealed when that agreement cannot be fulfilled because the question cannot be appealed.[160]

In *Boddus v. State*, Boddus was indicted with six counts of robbery.[161] Boddus filed a written motion to suppress statements and a search, which the trial court overruled after a hearing.[162]   Thereafter, Boddus pled guilty.[163] The record is clear that Boddus, the trial court, and the State all believed, albeit erroneously, that Boddus could appeal the denial of the motion to suppress.[164]  The court of appeals found that the Boddus's plea was involuntary because he pled under the false belief that he would be able

---

[160] *United States v. Lopez*, 571 F.2d 1345 (5th Cir. 1978); *United States v. Hill*, 564 F.2d 1179 (5th Cir. 1977); *Broddus v. State*, 693 S.W.2d 459 (Tex. Crim. App. 1985); *Harrelson v. State*, 692 S.W.2d 659 (Tex. Crim. App. 1985); *Christal v. State*, 692 S.W.2d 656 (Tex. Crim. App. 1981); *Wooten v. State*, 612 S.W.2d 561(Tex. Crim. App. 1981).
[161] *Broddus*, 693 S.W.2d at 460.
[162] *Id.*
[163] *Id.*
[164] *Id.*

to appeal.[165] However, in the interest of judicial economy, the court of appeals reviewed the trial court's ruling on the motion to suppress and found that the court's ruling was correct.[166] Notwithstanding that finding, the court of appeals reversed and remanded the case for a new trial because the plea was involuntary.[167] The Texas Court of Criminal Appeals affirmed the court of appeals' decision and reversed and remanded the case for a new trial because Boddus's understanding of his right to appeal was erroneous, and therefore, the plea was involuntary.[168]

The facts of this case are almost identical to *Broddus*. Appellant filed a written motions to suppress the blood evidence and her statements.[169] There was a hearing on the motions and the trial court overruled them.[170] Thereafter, Appellant pled guilty, partly based on her belief that she would be able to appeal the trial court's ruling on the motion to suppress.[171] The Code of Criminal Procedure allows defendants to appeal matters they have raised by written motion prior to their guilty plea.[172] During the guilty plea, the trial court specifically told Appellant that she would be able to appeal "any matters that have been raised by written motion prior to trial

---

[165] *Id.*
[166] *Id.*
[167] *Id.*
[168] *Id.* at 461.
[169] (C.R. I at 49-52).
[170] (R.R. II).
[171] (R.R. III).
[172] Tex. Crim. Proc. Code Ann. art. 44.02.

[sic] today."[173] However, the belief of Appellant, the State, and the trial court that Appellant would be able to appeal the trial court's ruling on the motions to suppress was erroneous.[174] This erroneous belief renders Appellant's guilty plea involuntary, and therefore, the trial court erred when it did not grant Appellant's motion for new trial.

**PRAYER**[175]

Appellant respectfully prays that this Honorable Court reverse the judgment of the trial court.

Respectfully submitted,

ROBERT A. SCARDINO
Bar No. 17719500
Sweeny, Coombs & Fredericks Bldg.
Houston, TX 77002
T: (713) 229-9292
F: (713) 229-9931

**CERTIFICATE OF SERVICE**

This is to certify that on December 21, 2015, a true and correct copy of the above and foregoing document was served on the State.

---

[173] (R.R. III at 6).
[174] (C.R. I at 111).
[175] Tex. R. App. 38.1(j).

Robert A. Scardino

## TRAP 9.4 CERTIFICATE OF COMPLIANCE

Pursuant to TRAP 9.4, I hereby certify that his brief contains 6,340 words. This is a computer-generated document created in Microsoft Word, using Goudy Old Style 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

Betsy Scardino, Legal Assistant